**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

UNITED STATES OF AMERICA

v. Case No.: 2:07-cr-50-FtM-34SPC

CEDRICK O. FARMER
______________________________/

**O R D E R**[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress Evidence (Dkt. No. 21; Motion). The government opposes Defendant's Motion. See Government's Response to Motion to Suppress Evidence (Dkt. No. 24). The Motion was referred to the Honorable Sheri Polster Chappell to conduct an evidentiary hearing and recommend an appropriate resolution. As a result, the Magistrate Judge held an evidentiary hearing, see Transcript of Proceedings (Dkt. No. 32; Tr.), and entered a Report and Recommendation (Dkt. No. 33; Report) recommending that the Motion be denied. Thereafter, Defendant filed his Amended Objections to Report and Recommendation (Dkt. No. 38; Objections), and the government responded to the Objections, see Government's Response to Defendant's Amended Objections to Report and Recommendation (Dkt. No. 41). Therefore, this matter is now ripe for the Court's review.

---

[1] This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the motions addressed herein and is not intended for official publication or to serve as precedent.

Upon de novo and independent review of the parties' filings, the transcript of the hearing before the Magistrate Judge, the exhibits received into evidence at the hearing, the Report and Recommendation, as well as the Defendant's Objections and the government's response, the undersigned determines that the Magistrate Judge's disposition of the Motion is correct. Indeed, the Court has reviewed Defendant's specific objections to the Magistrate Judge's findings of fact and conclusions of law and finds that the objections are without merit.[2] Additionally, to the extent that Defendant includes general and nonspecific objections to the factual findings, see Objections at 2, as the Court previously cautioned, such generalized objections are not sufficient to warrant de novo review, see Order (Dkt. No. 37) at 1 n.1.

Nonetheless, the Court takes this opportunity to make a few additional observations regarding Defendant's Objections and his challenge to the officers' actions in this case. Based upon a review of the record, the undersigned concludes that the officers' initial detention of Defendant was lawful because there was probable cause to believe that Defendant had committed a traffic infraction. While the officers each described the manner in which the vehicle was parked somewhat differently, see Tr. at 9-12, 62, 81-82, 102, 104, 136, 148, it is undisputed that Defendant's car was parked in such a manner that it obstructed the flow of traffic on the street, see id. at 17-18, 64, 102, 136, 148. It is also undisputed that the vehicle was not parked parallel to the curb or the edge of the road. See

[2] There are several instances in the Objections wherein Defendant suggests his version of the events, see Objections at 4, 17, 24, 27, 31; however, Defendant chose not to testify at the evidentiary hearing before the Magistrate Judge, and he cannot now contradict the officers' testimony or seek to have the Court adopt his version of the events through his counsel's argument in the Objections.

id. at 9-12, 62, 74, 102, 136, 148. Consequently, the officers had probable cause to believe that a traffic violation had occurred.[3] See Fla. Stat. §§ 316.195, 316.2045; see also Draper, 369 F.3d at 1276 (finding that there was probable cause to support a traffic stop when there was no evidence to directly contradict the officer's version of events). Thus, the initial detention of Defendant did not violate the Fourth Amendment.

Alternatively, even if the alleged traffic violation did not provide a basis for detaining Defendant, the Court agrees with the Magistrate Judge that the officers had reasonable suspicion to believe that there was criminal activity afoot to justify this detention.[4] See

---

[3] Defendant suggests that, in determining whether the initial detention of Defendant was lawful, the Court is limited to the officer's subjective beliefs as to the reason for the stop, and the officers, here, offered conflicting reasons for detaining Defendant. See Objections at 4-5, 22. Additionally, Defendant asserts the traffic stop was not the real basis for his detention, as evidenced by the fact that the officers did not ask any questions relating to the traffic offense or conduct an investigation to determine whether, in fact, the vehicle was illegally parked. See id. at 5, 7, 22. The officers testified, however, that both the illegal parking, which was obvious, as well as the suspicious nature of the vehicle provided the basis for the detention of Defendant. See Tr. at 8, 50, 56-57, 63, 93-95, 108, 134-35, 139, 147, 152-53. Moreover, it is well settled that an officer's subjective motivations are irrelevant when evaluating whether a seizure was reasonable under the Fourth Amendment. See Arkansas v. Sullivan, 532 U.S. 769, 771-72 (2001) (per curiam); Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004); Whren v. United States, 517 U.S. 806, 814 (1996) (recognizing that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); see also Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004); United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999); United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997) (per curiam); United States v. Couch, No. 03-172-N, 2004 WL 419903, at *2 (M.D. Ala. Feb. 5, 2004) (finding that "as long as a police officer has probable cause to believe that a traffic violation has occurred, any other reason the officer might have in his mind for the stop is irrelevant"). Therefore, "a traffic stop is a constitutional detention if it is justified by reasonable suspicion under Terry or probable cause to believe a traffic violation has occurred under Whren." United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003); see also Simmons, 172 F.3d at 778; Holloman, 113 F.3d at 195. As long as there were reasonable grounds to believe that a traffic infraction had occurred, the traffic stop will be deemed valid. See Chanthasouxat, 342 F.3d at 1277 (recognizing that "'the Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one.'" (quoting United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000))). In this case, the undisputed facts demonstrate that the officers had probable cause to believe that Defendant had committed a traffic infraction.

[4] The undisputed facts of this case reveal yet another alternative justification for this detention. The traffic infraction provided a lawful basis for stopping Defendant and detaining him. Once he was properly detained, in the course of the investigation into the traffic infraction and very shortly after the initial detention, Defendant admitted that there was a weapon concealed in the vehicle. See Tr. at 25, 149. Upon receiving this information, the officers had a duty to investigate this possible criminal activity. See United States v. Mackey, 149 Fed. Appx. 874, 879-80 (11th Cir. 2005). Indeed, Florida Statutes section 790.01(1) provides "[e]xcept as provided in subsection (4), a person who carries a concealed weapon or electric weapon or device

Report at 10-13.  Pursuant to Terry v. Ohio, 392 U.S. 1, 22 (1968), the central question is whether "the officer can point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'"  United States v. Pruitt, 174 F.3d 1215, 1219 (11th Cir. 1999) (quoting United States v. Griffin, 109 F.3d 706, 708 (11th Cir. 1997) (per curiam)).  Indeed, in order to justify the detention of Defendant, the officers must have had "a reasonable articulable suspicion that criminal activity [was] afoot."  Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  Additionally,

> whether reasonable suspicion existed at the time [of the investigatory stop] is a question of law to be determined ultimately by judges, not policemen . . . . [T]he question . . . is not whether a specific arresting officer . . . actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify such a search.

United States v. Nunez, 455 F.3d 1223, 1226 (11th Cir. 2006) (internal quotation marks omitted and alterations in original); see also United States v. Harris, No. 07-13473, 2008 WL 1971313, at *1 (11th Cir. May 8, 2008).

---

on or about his or her person commits a misdemeanor of the first degree, punished as provided in s. 775.082 or s. 775.083."  In addition, section 790.02 instructs that
> [t]he carrying of a concealed weapon is declared a breach of peace, and any officer authorized to make arrests under the laws of this state may make arrests without warrant of persons violating the provisions of s. 790.01 when said officer has reasonable grounds or probable cause to believe that the offense of carrying a concealed weapon is being committed.

A concealed weapon is defined as "any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon carried on or about a person in such a manner as to conceal the weapon from the ordinary sight of another person."  Fla. Stat. § 790.001(3)(a); see also Coultas v. State, 955 So. 2d 64, 66 (Fla. Dist. Ct. App. 4th 2007) (recognizing that a knife may be considered a concealed weapon); McNeally v. State, 884 So. 2d 494, 495 (Fla. Dist. Ct. App. 5th 2005) (same).  The requirement that the weapon be "on or about the person" has been interpreted as "physically on the person or readily accessible to him."  Ensor v. State, 403 So. 2d 349, 354 (Fla. 1981) (emphasis added); see also Lamb v. State, 668 So. 2d 666, 667-68 (Fla. Dist. Ct. App. 1996); Mense v. State, 570 So. 2d 1390, 1392 (Fla. Dist. Ct. App. 1990) (per curiam) (finding that a weapon was on or about the driver of the truck when it was located on the floorboard).  Thus, Defendant's admission shortly after the initial stop provided, at a minimum, reasonable suspicion for the continued detention of Defendant.

Reasonable suspicion requires "more than an inchoate hunch and the [F]ourth [A]mendment accordingly requires that police articulate some minimal, objective justification for an investigatory stop." United States v. Boyce, 351 F.3d 1102, 1107 (11th Cir. 2003) (internal quotation marks omitted) (alterations in original); see also Wardlow, 528 U.S. at 123 (recognizing that the Fourth Amendment requires "a minimum level of objective justification for making the stop").  This determination "must be based on commonsense judgments and inferences about human behavior." Wardlow, 528 U.S. at 125.  Further, the Court must consider the totality of circumstances. See United States v. Sokolow, 490 U.S. 1, 8 (1989).

The Supreme Court in Wardlow acknowledged that the factors relied on to establish reasonable suspicion may be ambiguous and there may be innocent explanations for them, but the officer is permitted to stop the individual to resolve the ambiguity. See 528 U.S. at 125.  Indeed, the Court previously commented in Sokolow that "'there could . . . be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.'" 490 U.S. at 9 (quoting Reid v. Georgia, 448 U.S. 438, 441 (1980) (per curiam)).  Thus, innocent acts when considered together might justify a finding of reasonable suspicion. See id. at 9-10; see also Terry, 392 U.S. at 22.  For example, the fact that a stop occurred in a high crime area or that the defendant fled unprovoked by the officer would be permissible factors to consider in evaluating whether reasonable suspicion existed to detain an individual. See Wardlow, 528 U.S. at 124-25.  A finding of reasonable suspicion, however, will not be supported when the combination of factors cited in support of the finding "could plausibly describe the behavior of a large portion of the motorists

engaged in travel upon our interstate highways." United States v. Tapia, 912 F.2d 1367, 1371 (11th Cir. 1990). Furthermore, mere suspicion in the air is insufficient to validate an investigative detention. See United States v. Hammack, 604 F.2d 437, 441 (5th Cir. 1979).[5]

In this case, at the time of the initial encounter, the officers had (and were able to articulate) sufficient, specific facts – i.e., the call received regarding a suspicious vehicle, the unusual and improper manner in which the vehicle was parked, the high crime area, the fact that Defendant and the passenger were sleeping in broad daylight, and the numerous items and belongings in the vehicle – to conclude that there was criminal activity afoot and objectively justify this detention. See Tr. at 8-9, 21, 25, 49, 93-95, 137-39, 149-50. The specific facts articulated were sufficient to suggest criminal activity and reasonably warrant the intrusion. Although there may be an innocent explanation for these facts and many of these facts describe wholly lawful conduct, that does not render the detention of Defendant unlawful. See Wardlow, 528 U.S. at 125; Sokolow, 490 U.S. at 9.

Additionally, Defendant contends that the officers exceeded the scope of the stop – whether based on the traffic stop, reasonable suspicion of other criminal activity, or both – when they questioned Defendant first regarding the presence of weapons in the vehicle rather than about the basis for the stop. See Objections at 22-25. This contention, however, is without merit. First, as there was a reasonable basis for the officers to detain Defendant, they were allowed to inquire as to presence of any weapons as well as take any

[5] This case and all Fifth Circuit cases decided prior to September 30, 1981, are binding precedent pursuant to Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

other action to protect their safety, and this inquiry did not unreasonably prolong the detention.[6]  See, e.g., Tr. at 23, 27.  Moreover, Defendant's answers to the questions regarding the presence of weapons in the vehicle did not dispel, but heightened, the officers' suspicions that there was criminal activity afoot.[7]  Defendant not only indicated that there was a weapon in the car, which needed to be secured for safety reasons, but his inconsistent answers provided additional justification for continuing his detention. See, e.g., Tr. at 23-28.  Thus, the officers in this case acted reasonably in continuing to detain Defendant until their suspicions were dispelled or confirmed.  See Boyce, 351 F.3d at 1106 (finding that a traffic stop may be prolonged if the officer "has 'articulable suspicion of other illegal activity'" (quoting United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001))); United States v. Perkins, 348 F.3d 965, 970 (11th Cir. 2003); Pruitt, 174 F.3d at 1219.[8]

---

[6] "It is well established that officers conducting a traffic stop may 'take such steps as are reasonably necessary to protect their personal safety.'" United States v. Gonzalez, No. 07-14651, 2008 WL 1923073, at *3 (11th Cir. May 2, 2008).  In this case, it was not unreasonable for the officers to inquire first as to whether there were any weapons in the vehicle in order to ensure their safety as well as the safety of others, including the juvenile residents of a nearby group home, before conducting an investigation into the reason for the stop or detention – i.e., the traffic offense or the suspicion of criminal activity.  See Tr. at 19, 25.  This inquiry did not unreasonably prolong the duration of the stop and was necessary in order to protect the officers' safety.  See United States v. Francis, 140 Fed. Appx. 184, 186 (11th Cir. 2005).  Indeed, the officers questioned Defendant regarding the presence of the weapons shortly upon his initial detention; it was the second question posed to him.  See Tr. at 23.  Defendant responded that he had a weapon in his vehicle and continued to confirm this fact upon further questioning.  See id. at 23-28.

[7] Even if it might not have been illegal for Defendant to possess a knife or a cap gun, as Defendant suggests, see Objections at 26, that fact does not dispel the suspicion that Defendant had committed or was about to commit a crime, as a knife or any other weapon could be used to commit a robbery or other criminal offense.  More importantly, as discussed supra, concealing a knife or other deadly weapon on or about a person is a criminal offense.  Therefore, Defendant's possession of a weapon in the vehicle could reasonably cause the officers to fear for their safety as well as heighten their suspicion that there was criminal activity afoot, especially when the other facts are considered.

[8] The Court agrees with the Magistrate Judge that the fact that Defendant was placed in handcuffs did not transform this investigative detention into an arrest.  See Report at 15-16.  Additionally, even if Defendant was in custody when the officers inquired as to the location of the weapons, his statements were not made in violation of Miranda.  Numerous courts have recognized a public safety exception to the dictates

Furthermore, once Defendant stated that there was a knife in the vehicle, that statement, along with the other facts, provided the officers with sufficient justification to conduct a protective search of the vehicle in order to ensure their safety.[9] See, e.g., Tr. at 23-28, 67. Similarly, the officers' search of the vehicle when Defendant continued to assert that there was a weapon in the vehicle was justified as a reasonable intrusion, given the circumstances – Defendant's inconsistent and changing statements regarding the type of weapon contained in the vehicle as well as his repeated admissions that there was a weapon concealed in the vehicle. See, e.g., Tr. at 23-28. These searches were valid in order to ensure the safety of the officers and others.[10]

---

of Miranda in that officers are allowed to question a suspect regarding the location of weapons in order to ensure their safety as well as the safety of others. See New York v. Quarles, 467 U.S. 649, 653 (1984); United States v. Castellana, 500 F.2d 325, 326-27 (5th Cir. 1974) (en banc); see also United States v. Thomas, No. 02-4728, 2003 WL 22332270, at *1 (4th Cir. Oct. 14, 2003) (per curiam), cert. denied, 124 S. Ct. 1483 (2004) (mem.); United States v. Brutzman, No. 93-50839, 1994 WL 721798, at *2 (9th Cir. Dec. 28, 1994) (mem.); United States v. Diaz-Garcia, 808 F. Supp. 784, 788 (S.D. Fla. 1992).

[9] Terry establishes that an officer may conduct a frisk or pat down of an individual in order to conduct a limited search for weapons "where he has reason to believe that he is dealing with an armed and dangerous individual." 392 U.S. at 27; see also Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). This principle has been extended to allow the protective search of the passenger compartment of an automobile when there is a reasonable belief that the safety of the officers or others is in jeopardy. See Michigan v. Long, 463 U.S. 1032, 1049-52 (1983); see also United States v. Harris, 151 Fed. Appx. 882, 884 (11th Cir. 2005); Riley v. Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997). In order to conduct this search, however, "[t]he officer need not be absolutely certain that the individual is armed." Terry, 392 U.S. at 27. Thus, the operative inquiry is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. Defendant's admission that there was a weapon concealed in the vehicle was sufficient to justify a protective search of the vehicle. See Mackey, 149 Fed. Appx. at 880.

[10] Alternatively, the Court agrees with the Magistrate Judge that the search of the passenger compartment was a valid search incident to the arrest of the passenger. See Report at 18-19. The fact that the passenger was handcuffed and secured in the back of the police vehicle does not invalidate this search, even under Defendant's suggested interpretation of the law, see Objections at 28-29, given Defendant's statement that there was a weapon in the car and Defendant was being detained solely for the purpose of locating the weapon. See, e.g., Tr. at 29-31. Additionally, while there may be some ambiguity as to the precise sequence of events concerning the arrest of the passenger and search of the car, see id. at 58, 60, 97, it is undisputed that the passenger had been arrested by the time the officers conducted the search of the car that resulted in the discovery of the shotgun and cap gun, see id. at 25, 33-34, 61, 76, 87-88. Thus, it was proper for the officers to conduct a search incident to the arrest of the passenger. See Thornton v. United

Defendant also contends that Officer Knick improperly advised Defendant of his Miranda rights after his arrest. Upon review of the record, the Court finds this contention to be without merit. Officer Knick testified as to the warnings that he provided to Defendant before questioning Defendant after his arrest. See Tr. at 39-40, 69. Based on this uncontradicted testimony, the Court agrees with the Magistrate Judge that Officer Knick properly advised Defendant of his rights within the dictates of Miranda.[11] See id.; Report at 23. Further, Defendant's assertion that the government failed to establish that he provided a knowing, voluntary, and intelligent waiver of his rights prior to Officer Knick's questioning at the scene as well as Detective Murphy's questioning at the police station is unavailing. See Objections at 31-34. At the scene, after Officer Knick informed Defendant of his rights, Officer Knick asked Defendant whether he understood his rights to which Defendant responded that he did and Defendant indicated, by either nodding his head or affirmatively stating that he would talk, that he wanted to answer questions. See Tr. at 40-41, 72. Defendant then proceeded to answer Officer Knick's questions. Id. at 41-42, 72. There is no evidence that Officer Knick intimidated, coerced, or deceived Defendant into

States, 541 U.S. 615, 617 (2004) ("[W]hen a police officer has made a lawful custodial arrest of an occupant of an automobile, the Fourth Amendment allows the officer to search the passenger compartment of that vehicle as a contemporaneous incident of arrest.").

[11] In his Objections, Defendant does not assert that Officer Knick failed to advise him of any specific rights or warnings required by Miranda. See Objections at 31. Instead, Defendant's objection is that Officer Knick's uncontradicted testimony as to what rights and/or warnings he provided to Defendant is not completely credible. See Tr. at 39-40. The Court finds this objection to be without merit.

answering questions or that Defendant invoked his rights at any time during the questioning. See id. at 20, 40-44, 72. Consequently, the Court finds that Defendant voluntarily, knowingly, and intelligently waived his rights at the scene.[12]

Likewise, Defendant again voluntarily, knowingly, and intelligently waived his rights while speaking to Detective Murphy. Although, after being advised of his rights, Defendant asked Detective Murphy whether he was waiving his rights by speaking with him, see Gov't Ex. 3; Tr. at 120-21, this question was not a clear and unequivocal invocation of his rights. Moreover, in response to Defendant's question, Detective Murphy reiterated to Defendant that he had all of those rights stated on the waiver form as well as explained again to Defendant that he did not have to talk and he could stop at any time. See Gov't Ex. 3; Tr. at 121, 130. Defendant responded that he knew the procedure. See id. He then confirmed that his statements were being recorded and indicated to Detective Murphy that he wanted the interview to be taped because he did not want anything to be tampered with and commented that he was going to take this case to trial. See Gov't Ex. 3. Defendant also confirmed that no promises or threats were made and that the officers had not exerted any pressure on him. See id.; Tr. at 118. The exchange between Defendant and Detective

---

[12] The Supreme Court has concluded that a "waiver is valid as a matter of law," "[o]nce it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction." Moran v. Burbine, 475 U.S. 412, 422-23 (1986). The waiver can be explicit, but also can be implied from a defendant's actions. See United States v. Chong, 829 F.2d 1572, 1574 (11th Cir. 1987). For example, if, after being advised of his rights, a defendant responds to questions posed by a law enforcement officer without requesting an attorney, a "waiver may be implied." Id.

Murphy establishes that Defendant made a voluntary, knowing, and intelligent waiver of his rights.[13]  See Gov't Exs. 2-3; Tr. at 114, 118-21, 124-25, 127, 129-30.[14]

For all of the foregoing reasons as well as those identified by the Magistrate Judge (to the extent that they are not inconsistent with the foregoing), the Court concludes that Defendant's Motion should be denied.  Accordingly, it is hereby **ORDERED**:

1. Defendant's Amended Objections to Report and Recommendation (Dkt. No. 38) are **OVERRULED**.

---

[13]  The audio recording of the discussion between Defendant and Detective Murphy, which is in evidence, further establishes the intentional, knowing, and voluntary nature of the waiver of Defendant's rights.

[14]  Defendant asserts that his waiver was ineffective because Detective Murphy never inquired into his educational background and because he was slurring his words during the interview. See Objections at 32-35. However, Detective Murphy's uncontradicted testimony is that Defendant appeared calm, did not seem to have any difficulty reading the waiver form, had no trouble speaking, did not slur his words, did not appear intoxicated, and presented organized thoughts. See Tr. at 114, 120, 125, 127, 129. There is no testimony to suggest that Defendant had a limited education or ability to understand his rights. When Detective Murphy attempted to re-advise Defendant of some of his rights, Defendant interrupted him and said that he knew the procedure. See Gov't Ex. 3; Tr. at 130. Additionally, Defendant wanted to make sure that the interview was being recorded, because he was going to take this case to trial. See Gov't Ex. 3. Thus, there is no evidence to suggest that Defendant failed to understand his rights or that he did not knowingly and intelligently waive his rights when he spoke to Detective Murphy. See Smith v. Zant, 887 F.2d 1407, 1430 (11th Cir. 1989) (Kravitch, J., concurring, in part, and dissenting, in part) (finding that the defendant "need not understand all the complexities of his fifth amendment rights and all of the implications of a decision to waive those rights. Rather, the defendant must understand only the core of the fifth amendment guarantee"); see also Moran, 475 U.S. at 422 (opining that the officer is not required to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights"). The Court also concludes that the Defendant's waiver was voluntary because there is no "evidence of psychological or physical coercion on the part of the agents." United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995).

  2. The Report and Recommendation (Dkt. No. 33), as supplemented by this Order, is **ACCEPTED**, and Motion to Suppress Evidence (Dkt. No. 21) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 10th day of June, 2008.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

lc1
Copies to:

Counsel of Record

The Honorable Sheri Polster Chappell
United States Magistrate Judge